## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

**CHRISTINA JEAN WILLIAMS,**
          **Plaintiff,**

          **v.**                                    **Civil Action No. 3:25-cv-00039**
                                                    **Judge D. Brooks Smith**
                                                    **Sitting by Designation**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**
          **Defendant**

### MEMORANDUM and ORDER OF COURT

SMITH, *Circuit Judge.*[*]

Plaintiff Christina Jean Williams seeks review of the final decision[1] of the

Commissioner of Social Security denying her application under Title II of the

Social Security Act for an award of disability insurance benefits (DIB), as well as a

period of disability insurance benefits. *See* 42 U.S.C. § 401 et seq. Williams's

motion for summary judgment, Cm/ecf no. 8, is ripe for disposition. Because the

---

[*] By order dated December 19, 2025, the Honorable Michael A. Chagares, *Chief Judge* of the U.S. Court of Appeals for the Third Circuit, designated and assigned Circuit Judge D. Brooks Smith pursuant to 28 U.S.C. § 291(b) to hold court in the Western District of Pennsylvania.
[1] Jurisdiction exists under 42 U.S.C. § 405(g) and 28 U.S.C. § 1331.

Commissioner's final decision is supported by substantial evidence, the motion for summary judgment will be denied, and the Commissioner's final decision will be affirmed.

## I.

Williams filed for DIB in September 2022.  CAR159.[2]  She was 41 years old at the time and alleged that she was disabled primarily on the basis of congestive heart failure and the presence of an abnormal FLNC gene causing nonischemic dilated cardiomyopathy,[3] which "put her at risk for sudden cardiac death." CAR339; *see also* 180, 328.  In addition to her cardiac problems, Williams had hypertension and morbid obesity.  CAR328.

Dr. Kathleen Zazzali, a cardiologist at Geisinger Health System, documented in a progress note dated June 2022 that Williams complained of fatigue, chest pain,

_____

[2]  CAR references the certified administrative transcript and the relevant page number.
[3]  Cardiomyopathy is a condition affecting the heart that "causes the heart to have a harder time pumping blood to the rest of the body."  Mayo Clinic, *Cardiomyopathy*, (Mar. 9, 2026) https://www.mayoclinic.org/diseases-conditions/cardiomyopathy/symptoms-causes/syc-20370709.

palpitations, and shortness of breath.  CAR332.  Diagnostic studies completed at that time documented a left ventricular ejection fraction of 25-29%, which is consistent with "severely reduced" heart function, together with abnormal ventricular tachycardia and supraventricular tachycardia.  CAR334.  Dr. Zazzali advised Williams that she "qualifie[d] for a dual chamber ICD," CAR337, *i.e.*, an implantable cardiac pacemaker/defibrillator.  CAR340, 376.  Williams agreed to the ICD procedure, which Dr. Zazzali performed on July 13, 2022.  CAR339.

During a follow-up visit in August 2022 at Geisinger with her primary cardiologist, Dr. James Bradbury, Williams complained of "easy fatigability," which caused her to stop working.  CAR390.  She described having energy some days, but on other days feeling "exhausted . . . like she has to nap every day.  *Id.* Dr. Bradbury noted that Williams's ejection fraction had improved post-ICD placement to 39%.  *Id.*  His physical assessment revealed a blood pressure of 108/80, a regular heart rate and rhythm, normal respirations, clear breath sounds, and an absence of edema in the extremities.  CAR391.  He adjusted one of her medications to address her complaint of fatigability.  CAR392.  He also noted that

3

the ICD diagnostics "revealed normal device function." *Id.* She applied for DIB

in September. CAR159.

On September 30, 2022, Williams had a follow-up visit at Geisinger with

Physician Assistant Chelsey Ernst (PA Ernst) and denied having dizziness,

palpitations or syncope. CAR651. But Williams, who raised chickens, CAR55,

informed a nurse that she was having jaw pain after she "tossed a heavy water

container" in her chicken coop and had "it bounce[] and hit her in the face."

CAR653. PA Ernst examined Williams, documenting that she was not in distress

and that her cardiac assessment was normal. CAR654. An x-ray showed no

fracture of her jaw. CAR659. Dr. Zazzali opined that the ICD was functioning

normally. CAR652.

Williams followed up in the Geisinger Outpatient Surgery clinic in

November 2022 with Dr. James Bradbury, who documented that Williams

complained of "relatively stable symptoms of fatigue and dyspnea that have not

worsened." CAR644. Dr. Bradbury noted there had been an "improvement" in her

ejection fraction heart function with an increase to "39%." *Id.* He assessed that

Williams's musculoskeletal system was normal.  He also observed that she had no gait disturbance or weakness, and exhibited no edema in her legs.  CAR645.  The "diagnostics" for her ICD, which had been inserted in July 2022, were "stable."  CAR646.

Dr. Bradbury saw her again in February 2023.  Although Williams complained of shortness of breath with exertion, Dr. Bradbury noted that she  had not "had any congestive heart failure admissions."  CAR682.  Physical examination revealed a regular heart rhythm, clear lungs, no edema and a normal neurologic examination.  CAR683.  Dr. Bradbury did not detect any symptoms indicative of "low cardiac output" and continued her current medication regime.  CAR684.

Dr. Bradbury referred Williams to Dr. Benjamin Pollock, a neurologist.  CAR674.  In March 2023, Dr. Pollock noted Williams's cardiac myopathy with the abnormal FLNC gene and discussed the significance of these myofibrillar myopathies for which the "main clinical feature [is] skeletal muscle weakness."  CAR680.  His assessment indicated that Williams had normal muscle tone in her

extremities and that her sensation was intact.  CAR677.  She was "able [to] stand from a seated position with ease with her arms crossed."  CAR680.  Dr. Pollock also noted she had bilateral carpal tunnel syndrome.  He planned to see Williams as needed should she develop muscle weakness, which he noted is the "main clinical feature" with the FLNC gene.  CAR680.

Two months later, in May, diagnostic testing confirmed the presence of bilateral carpal tunnel and "mild degenerative changes of the mid and lower cervical spine," CAR864, with radiculopathy on the left C7-8 and on the right C7.  CAR774.  Physical examination at that time revealed no edema of the extremities.  CAR848.  A course of conservative treatment, which included wearing a hand brace, proved not to be beneficial.  CAR847.  During surgery on June 14, 2023, Williams had a bilateral carpal tunnel release performed.  CAR899.

As part of Williams's medical evaluation for carpal tunnel surgery, she had a cardiac evaluation in early May 2023 by Certified Registered Nurse Practitioner Ashley Enciso (Nurse Enciso).  Williams denied exertional chest pain, but complained of shortness of breath, lightheadedness and fatigue.  Her condition

resulted in taking naps "throughout the day with improvement in symptoms." CAR851. Her left ventricular ejection fraction was calculated at 39% and characterized as "mildly improved." CAR854. Heart rhythm was regular, and her lungs were clear. She had no rales or rhonchi, and no edema in her extremities. CAR854. Significantly, Nurse Enciso noted that Williams experienced no further paroxysmal atrial fibrillation arrythmias on the ICD. CAR855.

On July 30, 2023, Williams visited the emergency room at UPMC Altoona (ER) with complaints of abrupt dizziness and lightheadedness, accompanied by low blood pressure. Her chest felt tight, and she was short of breath. CAR1033. Physical examination showed Williams's heart had a regular rhythm, her respirations were not labored, and she had no edema. *Id.* Evaluation of the ICD showed no arrhythmias. CAR1034. Dehydration was suspected, and she was discharged after being stabilized. *Id.*

The first week of August, Williams followed up her trip to the ER with a visit to Geisinger where she was seen by PA Ernst. Williams related to PA Ernst that the day before the July 30 ER visit, she had been "upstairs staining wood a lot

throughout the day." *Id.* PA Ernst conducted a physical examination, which revealed that Williams's neck range of motion was intact, heart rhythm and breath sounds were normal. The examination also showed that Williams's range of motion in her extremities was normal, and that she had no gait disturbance or edema. CAR1082.

Nurse Enciso later saw Williams on December 1, 2023, in a routine follow-up visit. CAR1058. Williams related that she generally felt well but complained of "palpitation[] symptoms that she described as a racing/pounding heartbeat," leaving her lightheaded and "more short of breath," followed by "a head rush sensation" and a headache. CAR1059. She denied any chest pain, but admitted that temperature extremes caused her fatigue. *Id.* She exhibited no lower extremity edema and complained of no side effects from her medications. *Id.* Review of the ICD's performance showed atrial pacing, "with no mode switches. No [ventricular arrhythmias]. No [defibrillator] shocks." CAR1058. Nurse Enciso noted in her assessment that Williams had "[n]o further episodes of paroxysmal AFib." CAR1062.

Later that month, on December 26, 2023, Nurse Enciso completed a form entitled Physical Residual Functional Capacity Questionnaire (RFC form). CAR1066-1069.  The diagnoses set forth on the RFC form related to Williams's cardiac condition, listing nonischemic cardiac myopathy, heart failure with reduced ejection fraction, the FLNC gene mutation, paroxysmal atrial fibrillation, hypertension, and the permanent pacemaker with the ICD.  CAR1066.  The listed symptoms were "fatigue, low activity tolerance, palpitations, fluid retention." *Id.* The clinical findings set forth stated "low heart (E[jection] F[raction]) function, edema/fluid retention." *Id.*  Nurse Enciso listed Williams's various medications and noted that they caused fatigue, frequent urination, and risk of bleeding. *Id.* She opined that neither emotional factors nor psychological conditions contributed to the severity of Williams's presentation.  CAR1066-67.

Nurse Enciso further noted that Williams occasionally experienced a lack of attention, or concentration needed to perform simple tasks.  Nurse Enciso identified stress as an exacerbating factor as it caused "elevated BP, heart rate, and fluid retention."  CAR1067.  She placed Williams on the following limitations:

9

lifting 10-20 pounds; standing for no more than 15-20 minutes; and walking without rest for no more than 5 minutes or 50 yards. *Id.* She placed no limitations on the RFC form with regard to movement of Williams's neck. *Id.* According to Nurse Enciso, Williams should take unscheduled breaks of 5-10 minutes every two hours during a workday. CAR1068 Nurse Enciso also directed Williams to elevate her legs to the level of the heart for at least four hours a day. *Id.* And Enciso provided several postural limitations and opined that Williams should never use ladders and only rarely engage in activity which required balancing. One positive observation: Williams's ability to handle and finger objects was unimpaired. CAR1068-69. Notably, Nurse Enciso did opine that Williams's condition was "likely to produce" up to three absences a month from work. CAR1069.

A hearing on Williams's application for benefits was conducted a little more than two weeks later, on January 11, 2024. Both Williams and a vocational expert (VE) testified at the hearing before an Administrative Law Judge (ALJ). CAR44. Williams testified that she could not work full-time because she was "exhausted most days," had a "hard time getting up," needed "to take naps during the day,"

had "brain fog," and experienced shortness of breath and lightheadedness.

CAR53. She added during her testimony to these symptoms that her "legs swell"

and that she had "a lot of pain in the back of her neck." *Id.* Williams also claimed

that her symptoms interfered with doing her household chores, and that "every

three to four days" she could not "get out of bed." CAR58.

The VE testified that Williams could not perform her past relevant work.

CAR61. But in the VE's opinion, there was other work available in the national

economy that someone with limitations akin to those experienced by Williams

could still perform. CAR61-62.

Williams had a chest x-ray done on January 14, 2024, a few days after the

ALJ hearing. The x-ray was negative for any congestive heart failure. CAR1124-

25. Breathing ambient air, Williams's oxygen saturation was 95%. CAR1129.

After considering all the evidence of record and applying the five-step

sequential evaluation required in 20 C.F.R. § 404.1520, the ALJ concluded that

Williams was not disabled for purposes of the Social Security Act. The ALJ found

that Williams had several severe impairments: "cervical degenerative disc disease

11

with radiculopathy, bilateral carpal tunnel syndrome, nonischemic dilated cardiomyopathy with pathogenic variant of the FLNC gene, status post dual chamber ICD placement, paroxysmal atrial fibrillation; pseudotumor cerebri, idiopathic intracranial hypertension, obesity." CAR29. None of these impairments, however, met or equaled any of the listings of certain musculoskeletal, neurologic or cardiac impairments in the regulations that establish an impairment precluding the individual from performing any gainful activity. CAR31-32 (citing 20 C.F.R. § 404, Subpart P, Appendix I).

The ALJ took into account the several restrictions limiting the type of work Williams could perform. CAR32. Accordingly, the ALJ found that Williams's impairments limited her standing and walking to four hours per day and that she was able to perform less than the full range of light work. Although Williams's severe impairments could be expected to cause the symptoms of which she complained, the ALJ nonetheless found that Williams's description of her limitations was "not entirely consistent with the medical evidence and other evidence" of record. CAR33. Having considered Williams's restrictions, the ALJ

credited the VE's testimony that Williams could not perform her past relevant work. Still, the ALJ concluded that there was other work available in the national economy that Williams could perform, despite her limitations. CAR35-37. Williams, the ALJ concluded, was not disabled under Title II of the Act from the time of her application through the date of the ALJ's decision. CAR37.

## II.

Williams sought judicial review. In reviewing the Commissioner's final decision, I must determine whether there is "substantial evidence" to support that decision. 42 U.S.C. § 405(g). Substantial evidence means there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Such evidence need only be "more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). As the Supreme Court observed in *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), "the threshold for such evidentiary sufficiency is not high."

## III.

Williams contends that the ALJ erred in several respects.  In Williams's view, the ALJ failed to discuss her congestive heart failure and whether it was a medically determinable impairment.  Cm/ecf no. 7 at 10.  Yet this argument ignores that the ALJ identified Williams's nonischemic dilated cardiomyopathy caused by the mutated FLNC gene, as well as the placement of the ICD and the paroxysmal atrial fibrillation, as severe impairments.  CAR29.  The record, the ALJ explained, did not establish the requirements for the listed impairments for cardiovascular disorders, chronic heart failure, ischemic heart disease, or recurrent arrhythmias.  CAR32.  And the ALJ discussed Williams's cardiac conditions in assessing her residual functional capacity (RFC).  CAR34.  The ALJ's discussion highlighted that the actual treatment records indicated that after the ICD placement in July of 2022, Williams had "no further episodes of paroxysmal atrial fibrillation."  CAR34; *see* CAR1058.  In addition, the ALJ pointed out that, after the placement of the ICD, Williams's left ventricular ejection fraction had improved to 39%.  CAR34; *see* CAR1058.  Furthermore, the diagnostic findings highlighted by the

ALJ were consistent with Nurse Enciso's earlier medical assessment of December 1, 2023.

Williams next contends that the ALJ failed to properly evaluate the December 26, 2023 medical opinion of Nurse Enciso. Cm/ecf no. 7 at 11-12. The error, according to Williams, is that the ALJ did not take into account the symptoms of fatigue, fluid retention, and the need to elevate her legs. I am not persuaded.

The ALJ accorded great weight to Nurse Enciso's opinion and concluded that less than the full range of light work accommodated Williams's complaint of fatigue. CAR34. In weighing Nurse Enciso's opinion, the ALJ permissibly concluded that the opinion was not fully supported by the documented medical assessments. CAR35. As the ALJ noted, Williams was on diuretics, CAR34, yet there was no mention in the records that suggests that her medication regime was inadequate or that she had problems with "fluid retention." Nor was there any mention prior to the December 26, 2023 opinion that Williams had experienced swelling in her legs requiring elevation. In fact, in the follow-up visit at the

15

beginning of December, Nurse Enciso documented that Williams had no lower extremity edema. CAR1059, 1061. As further support for discounting Nurse Enciso's opinion as to Williams's ability to work, the ALJ cited to Williams's own statement about her activity the day before her July 30, 2023 ER visit, *i.e.*, that she had been "upstairs staining wood throughout the day." CAR35; *compare* CAR1081. I conclude that there is substantial evidence to support the ALJ's decision to discount Williams's purported fluid retention and need to elevate her legs during a workday.

Despite the ALJ having accorded weight to Nurse Enciso's opinion by addressing all the diagnoses she set forth in her medical assessment of December 26, 2023, Williams contends that the ALJ "rejected" Nurse Enciso's "entire opinion." Cm/ecf no. 7 at 12. To support her argument, Williams takes aim at the ALJ's discounting of Nurse Enciso's medical opinion that Williams's condition would result in three absences per month. *Id.* This portion of Nurse Enciso's opinion, however, consisted of nothing more than checking a line on the RFC form. CAR1069. No supporting documentation was set forth. *Id.* I conclude that

the ALJ did not err by discounting this restriction on Williams's RFC, particularly in light of the ALJ's discussion of Williams's cardiac impairments and other medical evidence of record. *See Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("[F]orms that "'require[] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

In addition, Williams asserts that the ALJ's RFC finding is legally erroneous because it does not include most of the work limitations set forth in Nurse Enciso's December 26, 2023 opinion. She submits that the RFC did not account for the degenerative disc disease in her neck or the difficulty she has in handling and fingering. Cm/ecf no. 7 at 17-19. Yet the December 26 opinion specifically opined that Williams may engage on a constant basis in looking up and down, turning her head to both sides, and holding her head in one position. CAR1067. The December 26 opinion also notes that Williams has no difficulties with handling and fingering objects. CAR1069. This assessment is consistent with the ALJ's finding that, after the carpal tunnel surgery, Williams may frequently handle

17

and finger objects. CAR32. In the absence of documentation supporting or otherwise explaining Nurse Enciso's assessment that Williams needed an accommodation for headaches, the ALJ did not err in discounting that symptom. As explained above, the ALJ also permissibly discounted the need to account for Williams's alleged swelling in her legs. While Williams asserts that her limited ability to walk was not credited, the ALJ reasoned that Williams's "body habitus and obesity are reasonably accommodated" with an RFC for less than a full range of work. And the ALJ found that restricting Williams to less than a full range of light work reasonably accounted for shortness of breath, palpitations, and lightheadedness. CAR34. As the ALJ noted, the ICD failed to show any further episodes of paroxysmal atrial fibrillation. *Id.*

Finally, Williams contends that the ALJ erred by not addressing whether she was disabled for a closed period of disability. Cm/ecf no. 7 at 20. This argument ignores that the ALJ did consider this and concluded that Williams was not suffering a disability from July 2022 through the date of decision. *See* CAR37; *see also Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004).

18

In sum, after reviewing the submissions of the parties and considering the record "as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), I conclude that there is "sufficient evidence to support the agency's factual determinations." *Biestek*, 587 U.S. at 102 (internal quotation marks and citation omitted). I do not diminish the severity of Williams's condition or the discomfort and inconvenience that she experiences. But as the Supreme Court has observed, the threshold for showing substantial evidence to support the ALJ's decision "is not high." *Id.* at 103. Accordingly, Williams's motion for summary judgment, Cm/ecf no. 8, will be denied and the final decision of the Commissioner will be affirmed.

## ORDER OF COURT

AND NOW, this //*th* day of March, 2026, upon consideration of the

record, Plaintiff's Motion for Summary Judgment, cm/ecf no. 8, brief in support

thereof, cm/ecf no. 7, Defendant's Opposition thereto, cm/ecf no. 9, and Plaintiff's

Reply, cm/ecf no. 10, it is hereby ORDERED that Plaintiff's Motion for Summary

Judgment, cm/ecf no. 8, is DENIED and the Commissioner's final decision is

AFFIRMED.


s/D. Brooks Smith

D. Brooks Smith
U.S. Circuit Judge
Sitting by Designation